Receipt number AUSFCC-8825599

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FLUOR FEDERAL SERVICES, INC.    )
    )
Plaintiff,    )
    )    Case No. _____ **23-1013 C**
v.    )
    )
THE UNITED STATES OF AMERICA    )    \*\* ▮▮▮▮▮▮▮▮▮▮ \*\*
    )
Defendant.    )
    )

## COMPLAINT

Plaintiff, Fluor Federal Services, Inc. (Fluor), files this Complaint for declaratory and injunctive relief against the Defendant, United States of America, through its agency, the Federal Emergency Management Agency (FEMA). In support of this action, Fluor states as follows:

### PARTIES

1.    Fluor is an Arlington, Virginia, based company that has worked with FEMA for more than twenty-five years.

2.    Defendant is the United States of America, acting through FEMA.

### JURISDICTION AND PROCEDURAL BACKGROUND

3.    This action is a post-award bid protest challenging FEMA's decision to award a single-award Blanket Purchase Agreement (BPA) to AECOM Technical Services, Inc. (AECOM).

4.    Jurisdiction and venue in this Court are established by the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Disputes Resolution Act of 1996, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874-75 (1996), 28 U.S.C. § 1491(b).

5.    On February 13, 2023, FEMA awarded Contract 70FB8022A00000004 to AECOM (the Contract). The value of AECOM's Contract is $321,684,508.

6. The Contract was a single-award Blanket Purchase Agreement (BPA) valued in excess of $100 million and established against a General Services Administration (GSA) Multiple Award Schedule (MAS) contract.

7. As set forth in this Complaint, FEMA's award decision is flawed because FEMA, among other actions, misapplied the evaluation methodology set forth in the Solicitation and failed to consider all of AECOM's available past performance.

8. FEMA also improperly awarded a single-award BPA without publishing its written single-award justification as required by FAR 8.405-3, FAR 8.405-6, and FAR 5.301.

9. Finally, FEMA failed to evaluate Fluor's and AECOM's proposals in accordance with the terms of the Solicitation.

10. For these reasons, this Court should sustain this protest and issue preliminary and permanent injunctive relief, as well as declaratory relief, enjoining FEMA from commencing or continuing performance of the contract awarded to AECOM.

## STANDING

11. Fluor is an interested party with standing to protest FEMA's improper contract award because Fluor submitted a timely, qualified, proposal in response to FEMA's Request for Quotes.

12. Fluor's proposal was evaluated by FEMA and, but for FEMA's improper evaluation of AECOM's proposal, Fluor would have been selected for award.

13. Moreover, Fluor has demonstrated a non-trivial competitive injury that can only be addressed by judicial relief. Accordingly, Fluor's direct economic interest has been, and will be, adversely affected by FEMA's award to AECOM. Thus, Fluor is an interested party and has standing to pursue this Protest.

**FACTUAL BACKGROUND**

14.     The Public Assistance (PA) Program is FEMA's largest grant program, averaging $4.7 billion in assistance each year and accounting for 51 percent of the grant dollars administered by FEMA. In the last two years, the Program has provided over $40B in grant assistance. Through this program, FEMA delivers grant assistance for debris removal, emergency protective measures, and the repair, replacement, and restoration of disaster-damaged areas. Fluor has partnered with FEMA to support the PA Program in providing disaster relief assistance throughout the country for the last 25 years.

15.     In 2016, FEMA implemented a new delivery model, and identified four strategically located Consolidated Resource Centers (CRC) to process grant applications arising out of disasters in their respective geographic areas.

16.     Since 2016, FEMA has received assistance from multiple contractors to support CRC staff in reviewing, processing, and resolving applications for grant assistance from disaster-affected parties.

17.     Fluor has supported FEMA under its new delivery model, operating as the support contractor for CRC East in Winchester, Virginia, the most prolific CRC and the one with the highest productivity rating. Fluor has also performed work in CRC Central and CRC Atlantic.

18.     On November 2, 2021, FEMA issued Request for Quotation No. 70FB8021Q00000019 (RFQ) for CRC Support Services among contractors holding a GSA Multiple Award Schedule for Professional Services under NAICS codes 541611 and 541330.

19.     Although the RFQ was titled "BPA - REQUEST FOR QUOTE (RFQ) No. 70FB8021Q00000019," the attached Performance Work Statement ("PWS") stated that "FEMA's

acquisition strategy is to solicit and award *a single IDIQ contract* consisting of one base year and two (2) one-year options." See Exh. 3, Original PWS, at 2. (Emphasis added).

20. On December 28, 2021, FEMA issued Amendment 3, which changed the above language in the PWS to state that: "FEMA's acquisition strategy is to solicit and award *a BPA contract* consisting of one base year and two (2) one-year options." See Exh. 2 at 2. (Emphasis added).

21. To date, FEMA has never publicly published any justification for a sole source or single award BPA as required by FAR 8.405-3(a)(3)(ii) or (iii), FAR 8.405-6 or FAR 5.301.

22. FEMA also stated it would evaluate quotations based on the following factors, in descending order of importance:

- o Factor 1: Relevant Experience
- o Factor 2: Technical
    - ▪ Subfactor 1: Technical and Management Approach and Capabilities
    - ▪ Subfactor 2: Key Personnel
    - ▪ Subfactor 3: Quality Control Plan
- o Factor 3: Past Performance
- o Factor 4: Price

23. The RFQ provided that:

Factor 1 (Relevant Experience) is significantly more important than Factor 2 (Technical). Factor 2 (Technical) is significantly more important than Factor 3 (Past Performance). Offerors will not be eligible for award if rated "Fail" on Factor 1 (Relevant Experience) or rated "Low Confidence" Factor 2 (Technical) or any of its technical subfactors. Offerors will not be eligible for award if rated "No Confidence" under Factor 3 (Past Performance). All non-price factors, when combined, are significantly) more important than Factor 4 (Price).

24. The evaluation factors were a mix of pass/fail criteria and qualitative evaluation criteria. For Factor 1 (Relevant Experience), FEMA was to determine if the offeror possesses experience that is relevant to the PA CRC requirements, with more preference given to relevant

4

experience performed as a prime contractor than work performed as a managing partner, teaming member, or subcontractor. This evaluation was made on a "Pass/Fail" basis.

25.     Factor 2 (Technical) was separated into three subfactors: Technical and Management Approach and Capabilities, Key Personnel, and Quality Control Plan. FEMA evaluated the first two sub-factors by assigning a confidence score ranging from "Low Confidence" to the highest score of "High Confidence." The third sub-factor, Quality Control Plan, was evaluated on a pass/fail basis and assigned a rating of "Acceptable" or "Unacceptable."

26.     For Factor 3 (Past Performance), the offeror was required to submit information about contracts awarded within the past five years that are relevant to the efforts set forth in the PWS. The offeror was also required to provide three Past Performance Questionnaires ("PPQs") for each contract identified in the past performance volume.  Past performance was also evaluated based on relevancy, with FEMA assigning scores ranging from "Not Relevant" to the highest score of "Very Relevant." After the relevancy score was determined, the offeror's past performance was then evaluated on a confidence scale, ranging from "No Confidence" to "High Confidence."

27.     Finally, the RFQ stated that Factor 4 (Price) was the least important evaluation factor. Offerors were required to submit a price proposal which would be evaluated for price reasonableness.

28.     FEMA received seven quotations in response to the RFQ, including Fluor's. On May 16, 2022, Fluor received notice that it was not selected for award, and that FEMA had established a BPA with only one offeror, AECOM.

29.     AECOM's total evaluated price was $321,684,507.80, 11% lower than the price proposed by Fluor. Although FAR Part 8.405 does not require FEMA to engage in debriefings, Fluor requested further information about FEMA's award decision.

30.     On May 24, 2022, FEMA provided a "brief explanation" of its decision, in which it revealed that Fluor's quotation received the following ratings for the non-price factors.

- o   Factor 1: Relevant Experience - Pass
- o   Factor 2: Technical – High Confidence
  - ▪   Subfactor 1: Technical and Management Approach and Capabilities – High Confidence
  - ▪   Subfactor 2: Key Personnel – High Confidence
  - ▪   Subfactor 3: Quality Control Plan - Acceptable
- o   Factor 3: Past Performance
  - ▪   Highly Relevant
  - ▪   Satisfactory Confidence

31.     Notably, Fluor received the highest possible ratings for the Technical evaluation factor, which was the most important factor after offerors passed the Relevant Experience pass/fail requirement. Fluor also received the highest-possible rating for relevance under the Past Performance factor, which was more important than price.

32.     In its Brief Explanation, FEMA said that "while FLUOR was very competitive from a technical standpoint, its price was about $40.6 million higher than AECOM, who also submitted a strong technical proposal, and therefore AECOM was a better value to the Government."

33.     On May 26, 2022, Fluor protested the original contract award at the Government Accountability Office (GAO). That Protest was docketed as B-420783.

34.     A stay of performance was issued by FEMA on May 27, 2022.

35.     On June 28, 2022, GAO dismissed the protest because of FEMA's decision to take corrective action to re-evaluate proposals and issue a new source selection decision.

36.     FEMA's re-evaluation was completed on December 2, 2022. As stated above, FEMA did not resolicit, or otherwise amend, the RFQ.

37.     On February 13, 2023, FEMA re-awarded the contract as a single award BPA, to the original awardee, AECOM.

38.     Because the RFQ was not amended, FEMA's evaluation methodology, and level of importance assigned to each factor, did not change from the original solicitation.

39.     Despite awarding a single-award BPS, FEMA never published any justification for a sole source BPA as required by FAR 8.405-3(a)(3)(ii) or (iii), 8.405-6 or 5.301. Those provisions expressly require an agency head to determine in writing, and before contract award, the basis for a sole source BPA and to publish the determination.

40.     Despite the clear and unequivocal requirement to publish its written justification, FEMA failed to publish any such justification.

41.     On February 15, 2023, FEMA provided Fluor with a "brief explanation" of its new award decision, in which it revealed that Fluor's quotation received the following ratings for the non-price factors:

- Factor 1: Relevant Experience – Pass
- Factor 2: Technical – High Confidence
    - Subfactor 1: Technical Management Approach and Capabilities – High Confidence
    - Subfactor 2: Key Personnel – High Confidence
    - Subfactor 3 – Quality Control Plan – Acceptable/High Confidence
- Factor 3: Past Performance – Very Relevant
    - Subfactor 1 – Very Relevant
    - Subfactor 2 – Significant Confidence

42.     Notably, Fluor again received the highest possible ratings for the Technical evaluation factor, which was the most important factor after offerors passed the Relevant Experience pass/fail requirement. Fluor also received the highest possible rating for Past Performance factor, which was more important than price. Taken in total, Fluor received a near perfect overall rating on all non-price factors, which when combined are significantly more important than Factor 4 (Price).

43.     In its Brief Explanation, FEMA stated:



44.     On February 21, 2023, Fluor protested the contract award to FEMA at the GAO and the case was docketed as B-420783. A stay of performance was issued on the Contract. On June 1, 2023, GAO denied Fluor's protest.

## **PROTEST GROUNDS**

45.     FEMA's award to AECOM is fatally flawed because FEMA failed to apply the evaluation methodology required by the Solicitation. Specifically, FEMA failed to accord the non-price factors "significantly more" importance than price, as required by the RFQ.

46.     FEMA asserts that AECOM was selected by the Government for award because its proposal provided the Government with the best value when considering technical factors and price. Notably, however, the RFQ states clearly that "all non-price factors, when combined, are significantly more important than Factor 4 (Price)". This is especially important considering the agency acknowledges that although Fluor and AECOM scored similarly on Factor 1 and Factor 2, Fluor's Past Performance (Factor 3) rating was *higher* than AECOM's. As a result, absent a significant justification concerning price, Fluor should have been awarded the contract.

47.     Next, FEMA again claimed to have selected AECOM's quotation as representing the "best value" to the Government. However, the agency failed to perform a proper best value tradeoff. Instead, the agency mis-applied the evaluation methodology stated in the RFQ by placing

an undue emphasis on price, the evaluation factor which was identified as the least important in determining best value.

48.      As an initial matter, the RFQ never identifies a best value tradeoff as the methodology it would use to evaluate proposals. To be clear, the words "best value" are not found in the RFQ. FEMA did, however, list the evaluation factors in descending order of importance, such that Technical was the second-most important factor (following only the binary, pass/fail assessment of Relevant Experience) with price being the least important of the four factors. All non-price factors, when combined, were significantly more important than price.

49.      FEMA failed in several respects to evaluate Fluor and AECOM's quotations in accordance with the Solicitation. First, FEMA failed to qualitatively assess the technical factor in determining best value to the Government. The technical evaluation included three sub-factors: (1) Technical and Management Approach and Capabilities, (2) Key Personnel, and (3) Quality Control Plan. With regard to the technical evaluation, the RFQ stated that:

> The Government will evaluate the Offeror's Volume II Technical based on its feasibility, practicability, *innovativeness*, and appropriateness in accomplishing the tasks stated in the PWS. The Government will evaluate the offeror's proposal in regard to an accomplishable technical and management approach. Additionally, offeror's will be evaluated on the clarity of their approach and the ability to convey to the Government their capability to perform the requirements of the RFQ, PWS with minimal risk, *innovative and cost-effective ideas*. Offeror must demonstrate public sector industry-proven practices and processes that it will use to achieve the desired outcomes. The technical approach will be evaluated on the quality of proposed methodologies, practices and processes as well as specific related experience.

50.      Fluor proposed several cost-effective technical innovations that exceed the minimum requirements of the RFQ. ████████████████████████████

████████████████████████████████████████████████

9

████████████████████████████████████████████

████████████████████████████████████████████████ This approach provides enormous value to FEMA and reduces its risk of deploying unqualified or untrained staff into the PA program. Within its Quality Control Program, Fluor proposed ████████ ████████████████████████████████████████████ ████████ This shortens the timeline required for each project and exceeds FEMA's in-house capabilities. Finally, Fluor's key personnel are extremely qualified and experienced working within FEMA's CRC environment.

51.     FEMA acknowledged that Fluor's technical innovations provide immense value to the Government. FEMA stated that Fluor's training plan, ████████████████████, and ████████████████████, "raise[] the expectations of success because it demonstrates staff that are solely dedicated for the CRC contract ensuring staff readiness and availability to meet the demand for project workload and ensures the best candidate selection for the CRC project workload." FEMA found that Fluor's key personnel similarly "raise[] the expectations of success because of the extensive experience and knowledge of running programs and specific CRC workload from both Key Personnel presented."

52.     Despite FEMA's recognition that Fluor's proposal provided significant benefits, FEMA failed to properly analyze ██████████████████████████████ ████████████████████, a primary feature of a best value procurement. Instead, FEMA simply concluded that despite Fluor's quotation meeting, and in certain areas exceeding, AECOM's factor ratings, AECOM's quotation represented the best value to the Government ████████████████████████████████████.

53.     FEMA's analysis is not consistent with the "best value" approach FEMA claims to have undertaken. By failing to perform a qualitative analysis of the strengths of each technical

████████████████████████████████████

proposal and failing to consider ████████████████████████████████████
FEMA improperly over-emphasized price, the least important evaluation factor. In doing so,
FEMA failed to accord the non-price factors "significantly more" importance than price as
required by the RFQ.

## COUNT I

### FEMA Improperly Awarded a Single-Award BPA Without Publicly Publishing the Written Determination Required by FAR 8.405-3, FAR 8.405-6, and FAR 5.301

54.     When establishing a BPA, the FAR provides an explicit preference for agencies to
establish multiple-award, rather than single-award BPAs. FAR 8.405-3(a)(3)(i) ("The ordering
activity contracting officer shall, to the maximum extent practicable, give preference to
establishing multiple-award BPAs, rather than establishing a single-award BPA.")

55.     The FAR prohibits agencies from awarding single-award BPAs valued in excess of
$100 million unless the head of the agency determines in writing that: (1) orders under the BPA
are so integrally related that only a single source can reasonably perform the work; (2) the BPA
provides only for firm-fixed price orders for . . . services with prices established in the BPA for
specific tasks to be performed; (3) only one source is qualified and capable of performing the work
at a reasonable price; or (4) it is necessary in the public interest to award the BPA to a single source
for exceptional circumstances. FAR 8.405-3(a)(3)(ii).

56.     On or about October 27, 2021, before the agency issued the RFQ on November 2,
2021, FEMA prepared a written justification for issuing a single award BPA. In its written
determination, FEMA invoked the justification that "[o]rders expected under the BPA are so
integrally related that only a single source can reasonably perform the work."

57.     FEMA's decision to issue a single-award BPA is particularly concerning since the

services to be provided by AECOM are currently provided by multiple contractors. Never has FEMA expressed concerns regarding the performance or efficiency of the current contracting vehicles. Hence, FEMA's justification is unsupported.

58.    Nevertheless, in making its single-award determination, FEMA explained that it considered, among other things: (1) the nature of the support to be acquired under the BPA to include "rapid contractor support for disasters to support the PA program" in response to "multiple and unpredictable disasters"--and (2) the "need to provide consistency among the four CRCs."

59.    Despite its written justification, the hasty explanations set forth in FEMA's single-award justification are unsupported by the Agency's evaluation of its contracting requirements, including the statements set forth in FEMA's own Acquisition Plan.

60.    FEMA's 22 page Acquisition Plan makes no mention of the "integral" nature of the orders to be placed or the "critical" phased approach that was relied upon by FEMA when issuing its single-award determination. Instead, FEMA's Acquisition Plan references cost savings and a need for "rapid ordering procedures to meet high demand."

61.    Nowhere in its lengthy Acquisition Plan, nor in its written Determination does FEMA explain in detail the "integrally related" nature of the work or the "phased approach."

62.    Despite asserting in its written justification that the work to be issued was so integrally related that only one contractor can perform the work, FEMA's exhaustive Acquisition Plan, which was written solely for this procurement, mentions nothing about how the work is integrally related. FEMA's written justification also ignores entirely that the current PA program uses multiple contractors supporting multiple CRCs.

63.    FEMA's Acquisition Plan, and its written BPA justification, reveal that the true reason FEMA proceeded with a single award was cost savings, which is not an authorized

justification for issuing a single-award BPA.

64. The purpose of the federal procurement regulations is to ensure transparency in the procurement process. As part of this transparency, the FAR requires agencies to publish written justifications for single award contract.

65. FAR 8.405-3(a)(3)(iii) references the requirements set forth in FAR 8.405-6, and expressly states "[t]he requirement for a determination for a single-award BPA greater than $100 million *is in addition to* any applicable requirement for a limited-source justification at 8.405-6." (emphasis added).

66. Put simply, any BPA above the simplified acquisition threshold and supported by a justification must be published and posted. Yet, FEMA never published its written justification.

67. FAR 5.301 states that Posting is required of the justifications for "FSS orders or *Blanket Purchase Agreements with an estimated value greater than the simplified acquisition threshold* and supported by a limited-sources justification (see 8.405-6(a))." Accordingly, FEMA was required to publish its written justification for its single-source award BPA.

68. If FEMA is allowed to award a sole-source BPA without publishing the required justifications, then FEMA will be authorized to evade the very procurement regulations intended to ensure transparency in the procurement process.

## COUNT II

**FEMA Failed to Evaluate Fluor's and AECOM's Quotations Under with the RFQ's Terms**

69. As set forth above, FEMA's source selection decision is flawed because its evaluation of Fluor's proposal was improper. Among other actions, FEMA failed to consider the technical advantages that Fluor's proposal offered to the Government and to balance those advantages against Fluor's cost premium.

13

70.     FEMA acknowledged that Fluor's technical innovations provide immense value to the Government. Yet, despite this acknowledgement, and Fluor's higher-rated proposal, FEMA failed to fully document its reasoning for selecting AECOM for award.

71.     FEMA also improperly evaluated AECOM's proposal, specifically AECOM's experience and past performance. As a result of FEMA's errors, AECOM's quotation was given inappropriately high ratings for the non-price evaluation factors.

72.     FEMA identified Relevant Experience as the most important evaluation factor in this procurement. In fact, this requirement was a binary, pass/fail requirement, the failing of which rendered an offeror ineligible for award. Offerors were required to submit three contracts in their Volume I – Relevant Experience submission. An offeror's Experience volume was considered relevant if it met the following criteria: (1) at least one contract cited has a total value of $100M or above and the Offeror was the Prime Contractor; (2) at least one contract is for a 5-year BPA, IDIQ, or Contract with multiple (more than 10) concurrent task orders and the Offeror was the prime contractor on that BPA, IDIQ or Contract; and (3) The Offeror must identify work area(s) as it relates to the PWS for at least one contract as the Prime Contractor; and (4) "Offeror must submit a narrative to explain how experience cited in 1 – 3 are relevant to the PA CRC PWS requirements." Thus, FEMA narrowly defined "Relevant Experience" as experience performing work that is relevant to the specific PWS that was issued in this procurement.

73.     A similar analysis of relevance was required for offerors' Volume III Past Performance volumes. Specifically, the RFQ required offerors to submit information about three contracts performed within the last 5 years. FEMA was to assign a relevancy rating, as well as a confidence rating, to each offerors' past performance. The RFQ also provided that "[a]warded contracts must be relevant to the efforts required by this solicitation. Relevant efforts are defined

as services/efforts that are the same as or similar in scope, magnitude of effort, and complexity to the efforts stated in the PWS." To achieve a "Very Relevant" rating, the highest rating available and the rating that Fluor received, offerors must show that "present/past performance effort involved essentially the same scope and magnitude of effort and complexities [that] this solicitation requires." RFQ at 41.

74.     The project experience and contracts presented by AECOM in its proposals were unrelated to the type of work to be performed on the current solicitation. Therefore, FEMA lacked any basis for positively evaluating AECOM's past performance. CRC support work is more complex than the contracts AECOM has performed in the past. AECOM's lack of directly relevant experience should have impacted its ratings on Volume I – Relevant Experience volume (the most important evaluation factor) and on the relevancy rating for Volume III – Past Performance.

<u>**COUNT III**</u>

**FEMA Failed to Consider Close-at-Hand Information That Negatively Impacts AECOM's Past Performance Record**

75.     As part of its past performance review, FEMA asserted that it "will use any and all resources to evaluate past performance." Indeed, FEMA's response to a specific question regarding FEMA's past performance evaluation reveals that FEMA intended to use all possible resources available to consider past performance.

76.     In the Solicitation's questions and answer (Q&A), FEMA stated "The Government will use any and all resources to evaluate past performance to include questionnaires." The Q&A stated as follows:

   Q: The RFQ indicates the Government will consider past performance information contained in the Past Performance Information Retrieval System (PPIRS) for source selection purposes.  It seems PPIRS was officially retired in January 2019.  Is it the Government's intention to use Contract Performance Assessment Reporting

15

System (CPARS.gov) for this purpose?

A: The Government will use any and all resources to evaluate past performance to include questionnaires.

77.    Because FEMA asserted that it would rely on "any and all resources" to evaluate past performance, FEMA was obligated to consider all close at hand information related to AECOM's past performance.

78.    AECOM Technical Services, Inc. – the same AECOM entity that was awarded the FEMA Contract at issue here - is currently being prosecuted by FEMA and the United States Department of Justice for fraud, under the False Claims Act, arising from AECOM's prior contracts with FEMA. *See Romero v. AECOM et al.*, Case No. 2:16-cv-15092 (E.D.La. filed Sep 30, 2016).

79.    FEMA is fully supporting the Government's prosecution of AECOM, and FEMA counsel, including Charles Schexnaildre of FEMA's Disaster Litigation team, is part of the Government's prosecution team. Those contracts arose from work performed by AECOM after Hurricane Katrina, and FEMA paid AECOM more than $340 million under that contract.

80.    No dispute exists that FEMA, and the contracting team that awarded the current Contract, are aware of the Government's prosecution of AECOM for alleged fraud and that FEMA is assisting in the prosecution. Despite this knowledge, and an assertion by FEMA in that litigation that AECOM previously defrauded FEMA and the United States Government out of millions of dollars, FEMA found that AECOM's past performance was sufficient to award another contract exceeding $321 million.

81.    In other words, in one office within FEMA, the agency is prosecuting AECOM for fraud, while in another office, the same agency is awarding AECOM a contract exceeding $321

million.

82.     These pending allegations of fraud are from the same procuring activity (FEMA) and for the same or similar services (disaster response support under the Public Assistance Program). As a result, this information is so "close at hand" that FEMA should have reviewed it as part of AECOM's past performance analysis – especially when FEMA stated that it "will use any and all resources to evaluate past performance".

83.     Despite being fully aware of the AECOM litigation, FEMA did not consider this close at hand information. Instead, FEMA improperly restricted its review solely to the information that AECOM itself included in its proposal. By ignoring this critical past performance information, FEMA violated the procurement regulations and the FAR.

## COUNT IV

### FEMA failed to evaluate whether AECOM's proposed price was realistic

84.     Finally, FEMA's award to AECOM is flawed because FEMA did not evaluate AECOM's price in accordance with the terms of the Solicitation. Specifically, the RFQ states that FEMA would evaluate prices both for reasonableness and realism:

> Price proposal will be evaluated separate from technical proposal. In accordance with FAR 17.203(a) the Government will evaluate price reasonableness for this effort for the base period and two (2) one (1) year option periods. The Government will examine price proposals for artificially low unit prices. Offers found to be unreasonably high, *unrealistically low* or unbalanced, may be considered unacceptable and may be rejected on that basis.

85.     The RFQ went on to state that the agency would compare proposed prices to: the other prices received in response to the RFQ, the Independent Government Cost Estimate, available historical information, and the resources proposed in the corresponding technical volume.

86.     It is clear from the award to AECOM that FEMA did not undertake these analyses.

Specifically, FEMA could not have analyzed whether prices were unrealistic, or compared prices to historical data and resources proposed, and still concluded that award to AECOM was appropriate. AECOM's proposed price is simply too low to perform the requirements of the PWS.

<u>**COUNT V**</u>

**Preliminary and Permanent Injunction**

87.     Fluor realleges and incorporates by reference the allegations contained in all of the preceding paragraphs. Given the fundamental flaws in FEMA's procurement process and the irrationality of FEMA's award decision, preliminary and permanent injunctive relief enjoining FEMA from allowing AECOM to perform the Contract is appropriate.

88.     Absent an injunction, Fluor will be irreparably harmed because it will forever lose the ability to fairly compete for this $300 million contract based on a fair and equal evaluation of proposals that was rational and consistent with the Solicitation's evaluation terms and procurement law.

89.     FEMA will not be harmed by such an injunction. Fluor understands that FEMA has not yet issued AECOM a notice to proceed, and FEMA currently has multiple other contractors who can and do perform the same work that AECOM would perform. Moreover, any potential harm that FEMA may allege was caused by FEMA's own arbitrary, capricious, and unlawful actions. Similarly, AECOM will not be harmed by the imposition of a preliminary or permanent injunction because it has no right to perform an invalid and irrationally awarded contract.

90.     Finally, the public interest favors granting injunctive relief. Government procurements should be administered in a transparent, fair, and rational process, resulting in award decisions consistent with solicitation requirements and procurement law and regulations. FEMA's award to AECOM fails these standard.

91.     An overriding public interest exists in preserving the integrity of the federal procurement process and requiring agencies such as FEMA to adhere to the terms of the solicitation and all procurement regulations.

## PRAYER FOR RELIEF

WHEREFORE, Fluor respectfully requests that the Court declare FEMA's decision to award a contract to AECOM arbitrary and capricious and contrary to law. Specifically, Fluor requests that the Court:

A.      Issue a declaratory judgment as authorized by 28 U.S.C. § 1491(b)(2) declaring that the Defendant's award of a contract to AECOM under the Solicitation was arbitrary, capricious, an abuse of discretion, and contrary to applicable federal law and regulations;

B.      Issue a preliminary injunction restraining the Defendant from commencing or continuing the performance of the contract awarded to AECOM;

C.      Issue a permanent injunction restraining Defendant from commencing or continuing the performance of the contract awarded to AECOM;

D.      Order FEMA to re-open the solicitation for all offerors applying and to adhere to the established Solicitation evaluation criteria; and

E.      Provide such other relief as the Court deems appropriate.

s/ Scott P. Fitzsimmons
Scott P. Fitzsimmons, Esq.
WATT, TIEDER, HOFFAR &
FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, VA  22102
(703) 749-1000
sfitzsimmons@watttieder.com

Counsel for Fluor Federal Services, Inc.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed electronically via the

CM/ECF system. A true and correct copy was also served by email to the following parties, this

30th day of June 2023:

U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW,8th Floor
Washington, DC 20530
nationalcourts.bidprotest@usdoj.gov

*Counsel for the United States*

Matthew Lane
Federal Emergency Management Agency
Office of Chief Counsel
Procurement and Fiscal Legal Division
500 C Street, SW, 3rd Floor
Washington, DC 20472
Phone:  (202) 957-4234
matthew.lane@fema.dhs.gov

*Counsel for FEMA*

Sherwin Turner
Contracting Officer
Federal Emergency Management Agency
500 C Street, SW, 3rd Floor
Washington, DC 20472
Phone:  (202) 340-8917
sherwin.turner@fema.dhs.gov

/s/ Scott P. Fitzsimmons
Scott P. Fitzsimmons, Esq.
WATT, TIEDER, HOFFAR &
FITZGERALD, LLP
1765 Greensboro Station Place
Suite 1000
McLean, VA  22102
(703) 749-1000
sfitzsimmons@watttieder.com